BARBARA HAND, BY HER GUARDIAN AD LITEM, JESSE HAND, EMPLOYEE v. FIELDCREST MILLS, INC., EMPLOYER, SELF-INSURER

No. 8610IC819

(Filed 5 May 1987)

1. **Master and Servant § 94.3 — workers' compensation — head injury — plaintiff not initially incompetent**

   In a workers' compensation case where plaintiff's head was struck repeatedly by a loom and plaintiff's last temporary total disability compensation payment was more than two years before she was diagnosed as having permanent organic brain damage, the Industrial Commission did not err by finding that plaintiff was not incompetent at the time she initially returned to work and for two years thereafter, thus barring her claim by the two-year statute of limitations of N.C.G.S. § 97-47. N.C.G.S. § 97-50.

2. **Master and Servant § 93 — workers' compensation — wrong form furnished to employee — no equitable estoppel**

   Defendant was not equitably estopped from relying on the statute of limitations in a workers' compensation proceeding in which defendant had furnished plaintiff with an outdated Form 28-B which incorrectly stated that plaintiff had only one year to make a claim for further benefits where there was no allegation that plaintiff's delay in filing her request for review was induced by the incorrect form, or any other acts, representations or conduct of defendant, and there was no evidence that defendant acted in bad faith.

3. **Master and Servant § 77.2— workers' compensation—Form 21 agreement—final award—statute of limitations not tolled for unknown condition**

   An Industrial Commission Form 21 agreement is the equivalent of a final award, and the time limit provided in N.C.G.S. § 97-47 is not tolled because the award did not provide compensation for permanent organic brain damage then unknown. The two-year time limit of N.C.G.S. § 97-47 begins to run upon receipt and acceptance of the last compensation check, not when the injury constituting a change of condition is first diagnosed.

4. **Master and Servant § 85.3— workers' compensation—Industrial Commission authority to set aside own judgments—statute of limitations**

   While the Industrial Commission has the authority to set aside one of its judgments in a proper case, it does not have the authority to provide relief from the operation of the statute of limitations.

APPEAL by plaintiff from an Opinion and Award of the North Carolina Industrial Commission entered 24 February 1986. Heard in the Court of Appeals 13 January 1987.

*Smith, Patterson, Follin, Curtis, James & Harkavy by Henry N. Patterson, Jr., and Jonathan R. Harkavy for employee appellant.*

*Smith Helms Mullis & Moore by J. Donald Cowan, Jr., and Caroline Hudson Wyatt for employer appellee.*

COZORT, Judge.

Plaintiff suffered a compensable injury while in the employ of defendant. She did not realize the seriousness of her injuries until more than three years after she had received what amounted to the final award for her injuries. She attempted to reopen her case by writing a letter to the Industrial Commission. After a hearing, the Commission dismissed her request to reopen, finding that her claim for additional compensation was barred by the two-year statute of limitations in N.C.G.S. § 97-47, and further finding that the statute of limitations should not be waived on the basis of mental incompetence because there was evidence she was not incompetent during the two-year period. While we concur with plaintiff that the result is harsh, the law compels that we affirm the Commission.

Plaintiff was injured while working for defendant on 8 May 1976. She was attempting to oil the crank arms of a loom when a weaver unexpectedly started the loom, catching plaintiff's head

and neck between two steel poles as they moved back and forth at the rate of ninety (90) times per minute, thereby repeatedly twisting and striking her head and neck. The blows resulted in visible discoloration to the right rear of plaintiff's head, as well as lateral to her left eye. She was treated on that date at Morehead Memorial Hospital by a physician who diagnosed her condition as mild contusions to the right mastoid area and left zygoma.

On the following Monday, plaintiff had begun to experience intermittent episodes of headaches, dizziness, blurred vision, and soreness in her neck. Plaintiff was examined by staff physicians associated with defendant's medical department and allowed to return to work that day. She worked until 23 June 1976 when, because the symptoms continued, she became temporarily disabled for the following two weeks and five days. She returned to work on 12 July 1976 and at that time signed a "Form 21" agreement, pursuant to which defendant paid to her temporary total disability compensation for the time she had missed work. Plaintiff's last and only compensation check for $407.98 ($158.98 for lost wages and $249.00 for medical expenses) was paid to her on 12 July 1976. The Form 21 agreement, which contained no provision for any payment in the event of permanent injury or disability, was approved by the Industrial Commission on 20 July 1976.

On 25 October 1976, defendant completed and forwarded to the Commission and to plaintiff Form 28-B, Report of Compensation and Medical Paid, indicating the amount of compensation and medical expenses paid to plaintiff, and also indicating that the Form 28-B closed the case, including final compensation payments. The Form 28-B used by defendant was an outdated one which incorrectly notified plaintiff that she had only one year to make a claim for further benefits. (The law had been amended in 1974 to give employees two years to make a claim for further benefits. N.C.G.S. § 97-47.)

When plaintiff returned to work on 12 July 1976, she was earning the same wages as when she left work nearly three weeks before. Although she sometimes did the "smashing job," which had a higher rate of pay, the majority of the time following her injury plaintiff worked as a "draw-in hand." Plaintiff had worked as a draw-in hand from 1972 to 1975. The repetitive draw-in hand job required physical and mental dexterity, including the

ability to calculate and remember. Despite plaintiff's injury and continuing symptoms, she was able to satisfactorily perform these duties until her condition worsened to the point that she stopped working in January of 1982.

After plaintiff returned to work on 23 June 1976, she was treated by several physicians over the next six years. She was diagnosed as having a mild concussion and neck sprain. She was prescribed different medications for her symptoms of headaches, dizziness, blurred vision, and facial numbness.

On 20 March 1980, plaintiff submitted a handwritten letter to the Industrial Commission, in which she sought to reopen her case in an attempt to obtain additional compensation for the injuries she suffered in the 8 May 1976 accident. On 1 April 1980, by letter, the Industrial Commission acknowledged plaintiff's request to reopen her case, but also indicated to her that the statutory period for reopening her case had expired. The letter informed plaintiff that if she disagreed she had the right to request a hearing. On 12 December 1980, plaintiff's attorney wrote to the Commission to confirm her request for additional compensation.

Plaintiff stopped working for defendant in January of 1982. After having seen several physicians, plaintiff was referred to Dr. Angus Randolph, a psychiatrist at Bowman Gray School of Medicine in Winston-Salem. She was examined by Dr. Randolph on 10 June 1982; and, as a result of that examination, Dr. Randolph was of the opinion that plaintiff's symptoms were organic, rather than functional in nature, and due to the post-concussional syndrome that plaintiff had developed as a result of a permanent brain injury suffered when she was struck in the head while attempting to oil the loom. Dr. Randolph referred plaintiff to Dr. Frank Wood, a neuropsychologist associated with Bowman Gray, for neuropsychological testing in order to confirm his diagnosis and identify the particular aspect of the brain so affected. The 26 June 1982 tests by Dr. Wood objectively demonstrated, for the first time, that plaintiff was suffering from permanent organic brain damage involving her left temporal lobe.

On 28 March 1983 defendant made a motion to dismiss plaintiff's claim based on the ground that plaintiff's claim for additional compensation was barred by the two-year statute of

limitations period in N.C.G.S. § 97-47. On 8 April 1983 Deputy Commissioner Linda Stephens appointed plaintiff's husband as her guardian ad litem to pursue her claim. Hearings were held before Deputy Commissioner Lawrence B. Shuping, Jr., on 30 August 1983, 20 December 1983, and 15 March 1985. On 18 September 1985, Deputy Commissioner Shuping granted defendant's motion to dismiss plaintiff's claim.

Plaintiff appealed to the Full Commission. On 24 February 1986 the Industrial Commission entered its Opinion and Award affirming and adopting as its own Deputy Commissioner Shuping's Opinion and Award. The Commission stated:

> [P]laintiff's claim must fail on two grounds. She has failed to show she sustained a change in condition within two years of the last payment of compensation in this case; and, further she has failed to show that she was mentally incompetent at the time her right to reopen her case accrued as provided in G.S. 97-49. Under these conditions, there is nothing this office can do for plaintiff.

Commissioner Charles A. Clay dissented, voting to set aside the Commission's "final award" and to consider the plaintiff's claim on its merits, relying on the Supreme Court's decision in *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 337 S.E. 2d 477 (1985).

On appeal plaintiff contends: (1) her claim for disability is not barred under N.C.G.S. § 97-47 because she was mentally incompetent within the meaning of N.C.G.S. § 97-50; (2) the Commission erred in barring plaintiff's claim under N.C.G.S. § 97-47 because defendant's conduct equitably estopped it from relying on that statute of limitations; (3) the time limit in N.C.G.S. § 97-47 does not apply to plaintiff's claim because there was no "award" to be reviewed concerning a permanent disability; and (4) plaintiff is entitled to reopen her case based on the Commission's supervisory authority over its own judgments.

The scope of our review in this case is twofold: (1) whether there is any competent evidence in the record to support the Commission's findings of fact; and (2) whether the Commission's findings of fact justify its conclusions of law and decision. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981). The Industrial Commission is the sole judge of the witnesses' credibility

Hand v. Fieldcrest Mills, Inc.

and the weight to be given their testimony. *Anderson v. Lincoln Construction Co.*, 265 N.C. 431, 144 S.E. 2d 272 (1965). This Court does not have the right in this case to weigh the evidence and decide the issue on the basis of its weight. *Id.* If there is any competent evidence to support a finding of fact of the Industrial Commission, such a finding is conclusive on appeal, even though there is evidence that would have supported a finding to the contrary. *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865 (1963). Finally, the Commission's conclusions of law may not be disturbed if supported by the findings of fact. *Robinson v. J. P. Stevens & Co., Inc.*, 57 N.C. App. 619, 292 S.E. 2d 144 (1982).

[1] In this case plaintiff first assigns as error the Commission's finding of fact and conclusion of law that plaintiff was not incompetent at the time she initially returned to work after the compensable injury and for two years thereafter, thus barring plaintiff's claim by the two-year statute of limitations in N.C.G.S. § 97-47. Plaintiff argues that her claim is not barred under N.C.G.S. § 97-47 because she was mentally incompetent within the meaning of N.C.G.S. § 97-50.

N.C.G.S. § 97-47 provides, in part, that upon its own motion or application of a party "on the grounds of a change in condition," the Industrial Commission may review an award of compensation and increase it, provided, however, that "no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article . . . ." N.C.G.S. § 97-47. Thus, the Industrial Commission is given authority to review an award and increase it only when there has been a change in condition of the claimant as provided in N.C.G.S. § 97-47. Where the harmful consequences of an injury are unknown when the amount of compensation to be paid is determined by agreement, but later develop, the amount of compensation to which the employee is entitled can be redetermined within the statutory period of reopening under N.C.G.S. § 97-47. *Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 181 S.E. 2d 588 (1971). The two-year time limitation in N.C.G.S. § 97-47 is a statute of limitations, a technical legal defense which may be asserted by the employer. *Id.*

N.C.G.S. § 97-50 provides, however, that "[n]o limitation of time provided in this Article for the giving of notice or making

claim under this Article shall run against any person who is mentally incompetent . . . as long as he has no guardian, trustee, or committee."

In finding of fact number 14 the Commission found the following:

> Although due to the progressive deterioration in her condition . . . plaintiff is obviously presently incompetent to handle her affairs, and has been for the last several years thereby necessitating the appointment of the guardian Ad Litem herein; she was not incompetent at the time she initially returned to work for the defendant-employer on July 12, 1976 and contemporaneously received her last payment of compensation benefits pursuant to the Commission's prior final award herein; nor did she become incompetent at any time within the two years thereafter within which she could have experienced additional periods of compensable disability for which she was entitled to claim further compensation benefits . . . .

Based upon this finding of fact the Commission concluded the following:

> Although plaintiff is presently incompetent to handle her business affairs; she was not incompetent on the date that her right to claim further benefits initially accrued pursuant to the provisions of G.S. 97-47, or otherwise, when she received her last, and only, payment of compensation benefits under the Commission's prior final award herein or for more than two years thereafter; therefore, neither the two-year statute within which plaintiff could apply for a review of the Commission's prior final award pursuant to the provisions of G.S. 97-47 nor the lesser one-year period in which she could claim relief from the same award on the basis of newly discovered evidence was tolled herein . . . .

Plaintiff argues that the Commission's finding that plaintiff was not incompetent between the date of her injury and the date she applied for additional compensation and its conclusion that the two-year limit in N.C.G.S. § 97-47 bars plaintiff's claim have no meaningful basis in the record. We have carefully examined the record in this case. While there is evidence which would sup-

port a finding that plaintiff was incompetent during the relevant period, there is also evidence which supports the Commission's finding of fact that plaintiff was *not* incompetent. For example, defendant presented evidence that plaintiff performed her job, which required physical and mental dexterity, in a satisfactory manner, understood her pay scale and contested the amount when she thought it was too low. As such, the Commission's finding is conclusive. *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865. Thus, the Commission's finding that plaintiff was not incompetent supports its conclusion that N.C.G.S. § 97-47 bars plaintiff's claim.

[2]   Next, plaintiff argues that the Commission erred in barring plaintiff's claim under N.C.G.S. § 97-47 because defendant's conduct equitably estopped it from relying on that statute of limitations. Plaintiff argues that defendant supplied plaintiff with an outdated Form 28-B which incorrectly stated that plaintiff had only one year to make a claim for further benefits, when she actually had two years under N.C.G.S. § 97-47. The Commission found that defendant was not estopped because plaintiff did not detrimentally rely on the incorrect notice when she brought her claim more than three and one-half years after her receipt of the last payment of compensation. The Commission also found that "there is no other evidence of record that [defendant] engaged in any acts, representations or conduct that would similarly estop [defendant] from asserting the untimeliness of [plaintiff's] present claim (for further benefits)." Based on these findings the Commission concluded that defendant was not estopped to rely on the statute of limitations defense contained in N.C.G.S. § 97-47.

The law of estoppel applies in workers' compensation proceedings. *Willis v. Davis Industries, Inc.*, 280 N.C. 709, 186 S.E. 2d 913 (1972). The facts of this case, however, are insufficient to invoke the doctrine. There is no allegation that plaintiff's delay in filing her request for review was induced by the incorrect Form 28-B or any other acts, representations, or conduct of defendant. Furthermore, there is no evidence that defendant acted in bad faith. The Commission was correct in finding that plaintiff did not rely on the form to her detriment and in holding that defendant was not estopped to rely on the statute of limitations in N.C.G.S. § 97-47. This assignment of error is overruled.

[3]  Plaintiff next contends that N.C.G.S. § 97-47 does not apply to her claim because there was no "award" to be reviewed concerning a permanent disability. She argues that she is at least entitled to a hearing on her claim relating to her uncompensated organic brain injury regardless of the time limit in N.C.G.S. § 97-47. Plaintiff argues she received no compensation for any permanent disability or for any permanent loss or injury to any body organ because of her compensable injury.

An agreement for the payment of compensation, when approved by the Industrial Commission, is the equivalent of an award and is binding on the parties as any order, decision or award of the Commission unappealed from, or an award of the Commission affirmed on appeal. *White v. Shoup Boat Corp.*, 261 N.C. 495, 135 S.E. 2d 216 (1964); *Tucker v. Lowdermilk*, 233 N.C. 185, 63 S.E. 2d 109 (1951). Thus, contrary to plaintiff's contention, the Form 21 agreement approved by the Industrial Commission in her case is the equivalent of a final award. The time limit provided for in N.C.G.S. § 97-47 is not tolled because the award did not provide compensation for the permanent organic brain damage then unknown. As our Supreme Court stated in *Smith v. Mecklenburg County Chapter American Red Cross*, 245 N.C. 116, 122, 95 S.E. 2d 559, 563 (1956):

> Where the harmful consequences of an injury are unknown when the amount of compensation to be paid has been determined by agreement but subsequently develops, [*sic*] the amount of compensation to which the employee is entitled can be *redetermined within the statutory period for reopening*. It is a "change of condition" as the term is used in the statute. (Emphasis added.)

N.C.G.S. § 97-47 gave plaintiff two years from the date of last payment of compensation to bring her claim based upon change of condition. She did not file such a claim until 20 March 1980, more than three and one-half years after her receipt and acceptance of the last payment of compensation. Since she did not bring her claim based upon change in condition within the time allowed, her claim is barred by N.C.G.S. § 97-47. *Id.*

That plaintiff's permanent organic brain damage as a result of her compensable accident was not objectively demonstrated until June of 1982 does not relieve plaintiff from the time limit of

N.C.G.S. § 97-47. Unfortunately for plaintiff, the two-year time limit of N.C.G.S. § 97-47 begins to run upon receipt and acceptance of the last compensation check, not when the injury constituting a change of condition is first diagnosed. We cannot take into account that plaintiff's claim otherwise appears to have merit. As Justice Bobbitt stated in *Shearin v. Lloyd*, 246 N.C. 363, 370, 98 S.E. 2d 508, 514 (1957):

> Statutes of limitation are inflexible and unyielding. They operate inexorably without reference to the merits of plaintiff's cause of action. . . .
>
> It is not for us to justify the limitation period prescribed . . . . Suffice to say, this is a matter within the province of the General Assembly.

**[4]** Plaintiff's final argument is that the Commission erred in failing to exercise its inherent authority over its own judgments by not setting aside the final award to reopen the case. We do not agree.

In *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 129, 337 S.E. 2d 477, 478 (1985), the court held that the Industrial Commission has inherent power to set aside one of its former judgments "when the paramount interest in achieving a just and proper determination of a claim requires it . . . ."

We find *Hogan* inapposite to this case. Plaintiff herein does not seek relief from the 1976 final award. Instead, what plaintiff seeks is an additional award increasing the amount of compensation previously awarded, and relief, not from the operation of a former judgment or order, but from the statute of limitations in N.C.G.S. § 97-47. When the Industrial Commission reopens a case based on a change of condition under N.C.G.S. § 97-47, it does not set aside or provide relief against the operation of a former judgment. Rather, it simply enters an opinion and award finding that the employee has sustained a change of condition and is therefore entitled to additional compensation. While *Hogan*, in a proper case, gives the Commission the authority to set aside one of its judgments, *Hogan* does not give the Commission the authority to provide relief against the operation of a statute of limitations.

The Opinion and Award of the Commission is

Affirmed.

Judges MARTIN and PARKER concur.